**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | |
|---|---|
| SHARON ZALAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:10-CV-166 |
| ) | |
| WAL-MART STORES, INC., ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment, filed on January 13, 2011. For the reasons set forth below, this motion is **GRANTED**. Accordingly, this case is dismissed.

BACKGROUND

In April of 2010, Plaintiff, Sharon Zalas ("Zalas"), filed a complaint in St. Joseph Circuit Court arising from injuries allegedly incurred while shopping in a store owned by Defendant, Wal-Mart, Stores, Inc. ("Wal-Mart"). On April 29, 2010, Wal-Mart removed this case here based on diversity of citizenship jurisdiction. Wal-Mart has now filed the instant motion for summary judgment, asserting that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.

-1-

DISCUSSION

Summary Judgment Standard

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill*

*Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.

Facts

The facts are undisputed[1]. Accordingly, this Court adopts and reiterates the undisputed facts that are supported by the record.

---

[1] Zalas does not argue or specify that any of Wal-Mart's designated facts are disputed. In fact, Zalas characterizes Wal-Mart's designated facts as "undisputed." (Zalas Resp. p. 5). What Zalas argues is that the undisputed facts give rise to genuine issues that need to be resolved by trial.

On October 8, 2008, Zalas was shopping at the Wal-Mart Store on Ireland Road in South Bend, Indiana. (Dep. Zalas at p. 10). Zalas had shopped in the dairy department, then came back towards the meat department and turned to go down the produce aisle. (Dep. Zalas at p. 10). At this point, Zalas was pushing a shopping cart and heading toward the cash registers. (Dep. Zalas at p. 12). Zalas was not looking for any items in the produce aisle, but instead was looking towards the cash register. (Dep. Zalas at pp. 13-14).

As Zalas was walking through the produce department, she slipped and fell on a tomato which was lying on the floor in the produce section. (Dep. Zalas at p. 29). Shortly thereafter, Wal-Mart assistant managers Brian Bartlette ("Bartlette") and Gail Shuamber ("Shuamber") arrived at the scene. (Deposition of Zalas at p. 17; Deposition of Bartlette at p. 11; Deposition of Shuamber p. 19).

The tomatoes in the produce department are kept in a slanted rack near the aisle way where the tomato was on the floor. (Dep. Bartlette at pp. 34-35). Zalas' slip and fall happened at what is considered a slower time of the day for Wal-Mart in terms of numbers of customers present. (Dep. Shuamber at pg. 34).

After Zalas left the store, Shuamber, who was then the Produce Merchandise Supervisor, went to view the surveillance video. (Dep. Shuamber at pp. 28, 36). Shuamber viewed the video for the five to ten minutes prior to the incident. (Dep. Shuamber at p. 31).

Shuamber saw a small child in a cart drop the tomato from the cart onto the floor. (Dep. Shuamber at p. 31). The tomato then sat on the floor for approximately one to two minutes. (Dep. Shuamber at p. 31).

The surveillance video shows that at 2:36:00, the floor of the produce department was clear, without any tomatoes on the floor. (Aff. Nicholas Schafer ("Schafer") at ¶ 5). Approximately twenty seconds later a crowd of shoppers formed in the produce aisle, in front of the racks of tomatoes. (Aff. Schafer at ¶ 6). The crowd of shoppers remained in front of the tomato racks until approximately 2:37:55, when the crowd dissipated and the tomato became visible on the floor. (Aff. Schafer at ¶ 7). Approximately 30 seconds later, at 2:38:30, Zalas is seen pushing her cart down the aisle, falling on the tomato. (Aff. Schafer at ¶ 8). Accordingly, the tomato was on the floor for not more than two minutes and ten seconds before Zalas' fall.

Wal-Mart video surveillance cameras are not monitored on a live basis. (Dep. Shuamber at p. 28; Aff. Schafer at ¶ 3). This is consistent with the standard practice in the retail merchant asset protection industry. (Aff. Schafer at ¶ 3).

At all times, there was a Wal-Mart associate present in the produce area. (Deposition of Shuamber at p. 32). Job responsibilities of produce associates include zoning. (Dep. Shuamber at p. 33). Zoning involves picking up items that are on

the floor, or other misplaced items, and returning them to the proper place. (Dep. Shuamber at p. 33). Wal-Mart associates are trained that if any object, including produce, is on the floor, they are to stop and pick it up. (Dep. Bartlette at p. 53).

Wal-Mart associates working the produce floor are required to make a sweep of the produce area. (Dep. Bartlette at pp. 38-39). A sweep involves the associate walking through the area and checking certain things, including the condition of the produce area floor. (Dep. Bartlette at pp. 38-39). A Wal-Mart associate was seen on the surveillance video walking through the produce area, conducting a sweep, shortly before the tomato could be seen on the floor. (Dep. Shuamber at pp. 62-63; Dep. Jason McCoy ("McCoy") pp. 21-32). The Wal-Mart associate had inspected the area within fifteen minutes before Zalas slipped and fell. (Dep. Shuamber at p. 63; Dep. McCoy pp. 21-32).

Summary judgment in favor of Wal-Mart is
appropriate because the undisputed facts establish
that Wal-Mart had neither actual or constructive knowledge
<u>of the tomato on the floor that caused Zalas to slip and fall.</u>

It is undisputed that Zalas was a business invitee while at Wal-Mart. *Burrell v. Meads*, 569 N.E.2d 637, 642 (1991). As such, Wal-Mart "owed her a duty to exercise reasonable care for her protection while she remained on the premises." *Golba v. Kohl's Dep't Store, Inc.*, 585 N.E.2d 14, 15 (Ind. Ct. App. 1992). What this duty means is that:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
>> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>>
>> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>>
>> (c) fails to exercise reasonable care to protect them against the danger.

*Id.* (quoting Restatement (Second) of Torts § 343 (1995)).

Wal-Mart argues that there is no evidence that it had either actual or constructive notice of the tomato which caused Zalas to fall. Zalas argues that the undisputed facts raise genuine issues regarding whether Wal-Mart had actual or constructive notice of the tomato on the floor.

Typically, "the determination of whether a host has exercised reasonable care in making his premises safe for an invitee is a question of fact for the jury." *Golba*, 585 N.E.2d at 16 (citing *St. Casimir Church v. Frankiewicz*, 563 N.E.2d 1331, 1334 (Ind. Ct. App. 1990)). Indeed, "summary judgment is not proper in a slip-and-fall case where the question whether the store had actual or constructive notice is unresolved." *Id.* (citations omitted). However, when there is undisputed evidence that the store did not have actual or constructive notice of the dangers condition and that reasonable precautions were taken to protect customers from

items on the ground, then summary judgment is appropriate. *Id.* at 16-17.

Both parties rely on the Indiana Court of Appeals' *Golba* decision to support their respective positions. In *Golba*, while shopping at a Kohl's department store, Stella Golba stepped on a rounded object, which in combination with the high gloss finish on the floor caused her to fall. In discovery, Kohl's indicated that it swept the floor earlier that morning and that the floor would have been visually inspected at that time. There was no evidence that the floor was swept immediately before Golba slipped, only that it was swept "earlier in the morning." The accident occurred around 10:50 a.m. that morning. Kohl's did not deny that there was some type of wax or polishing agent applied to the floor, although it did not specifically identify the substance. Based upon these facts, the trial court granted summary judgment in favor of Kohl's. However, the court of appeals reversed that decision. The court of appeals stated, "we must conclude that there was an object on the floor upon which she slipped. We must also infer that the object was on the floor for a sufficient amount of time that morning such that we cannot say as a matter of law there could not have been constructive knowledge of the object." *Golba*, 585 F.E.2d at 17. In addition, the court found that "Kohl's has a corresponding duty to take reasonable care to protect its customers from [items being dropped on the ground]. The only evidence of preventative measures

taken by Kohl's was that its employees swept the floors of the store in the morning. We cannot say as a matter of law that sweeping the floor once a day constitutes the exercise of reasonable care to prevent injury to customers from objects on the floor." *Id.* Ultimately, there were a number of issues of material fact, "including whether there was in fact a rounded object on the floor, whether the floor was inordinately slippery, and if so, whether Kohl's knew or should have known of the dangerous condition. *Id.*

While issues of fact remained for the jury in *Golba*, which precluded the entry of summary judgment, no such unresolved issues are present in this case. To start, unlike the object on the floor in *Golba* that could have been on the floor for hours, the tomato on the floor in this case was only on the floor for no more than 2 minutes and 10 seconds. In *Golba*, because the evidence was on the floor for an unspecified period of time, there was a question for the jury as to whether Kohl's had constructive knowledge of the object on the floor. Here, however, the undisputed evidence is that the tomato was on the floor for no more than 2 minutes and 10 seconds. This is such an extremely short period of time that this Court can say as a matter of law that Wal-Mart did not have constructive knowledge of the tomato on the floor.[2]

Moreover, while the only evidence of preventative measures

---

[2] In addition, it is undisputed that Wal-Mart did not have actual notice of the tomato on the floor prior to Zalas' fall.

Kohl's took in *Golba* was a morning sweep of the floors, Wal-Mart has its employees regularly conduct visual sweeps of the aisles. In fact, a Wal-Mart employee conducted a visual sweep of the aisle Zalas fell in no longer than 15 minutes before Zalas fell. As a result, there is no question that Wal-Mart took reasonable measures to prevent injuries to customers from objects on the floor.[3]

This Court recognizes that summary judgment is rarely granted in these types of slip-and-fall cases. However, because the undisputed facts show that Wal-Mart took reasonable measures to prevent injuries to customers from objects on the floor and because Wal-Mart did not have either actual or constructive knowledge of the tomato on the floor, summary judgment is appropriate in this case.

CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is **GRANTED**. Accordingly, this case is dismissed.

DATED: August 8, 2011　　　　　　　　　　/s/RUDY LOZANO, Judge
　　　　　　　　　　　　　　　　　　　　**United States District Court**

---

[3]Wal-Mart's failure to retain multiple videos of Zalas' fall does not change this Court's opinion. Nor does the fact that a child was viewed on the surveillance video dropping items onto the floor. What is at issue is the length of time that the tomato was on the floor and whether Wal-Mart had actual or constructive knowledge of it being on the floor.